

**Dated: August 19, 2016.**

_____
**TONY M. DAVIS**
**UNITED STATES BANKRUPTCY JUDGE**

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 14-11240-tmd |
| | § | |
| RUSSELL ALLEN GRAVES | § | |
| CAROL L. GRAVES | § | CHAPTER 7 |
|     Debtors. | § | |

### <u>MEMORANDUM OPINION</u>

To prevent repetitious litigation, the doctrine known as "res judicata" holds that all matters that were or should have been litigated at the time of a judgment are barred from further litigation. As a corollary to this doctrine, any cause of action on a contract "merges" into the judgment on that contract, and disappears. But does a judgment on a note prevent collection of all attorney fees where the note specifically provides for the payment of *post-judgment* attorney's fees?

1

## I.    BACKGROUND AND FACTS

### A.  Original judgment

On May 16, 2008, American Bank of Commerce ("ABC") loaned money to Russell Allen Graves.[1] The promissory note signed for this loan provided for the collection of post-judgment attorney's fees from Graves.[2]

Some twenty months later, Graves defaulted on payment. ABC sued, and a state court granted ABC summary judgment on the amount owed.[3] The court also awarded ABC other fees, including $2,500 for "attorney's fees for services rendered through the trial of this case" and $2,000 for "legal fees for the foreclosure of the security arrangement" (there was apparently a prior foreclosure on some real estate that secured the note), for a total of $4,500 in legal fees.[4] The judgment further stated "[a]ll relief not expressly granted herein is denied."[5]

### B.  Post-judgment collection efforts

More than four years after judgment, ABC filed an application to garnish a brokerage account owned by Graves.[6] Six months later, Graves filed bankruptcy under chapter 7, the brokerage account became property of the bankruptcy estate, and the funds in the account—totaling $110,473—were transferred to the chapter 7 Trustee.[7] Afterwards, all other security interests to the account were released, leaving ABC with the only remaining claim secured by the account.[8] Three months after the bankruptcy filing, ABC filed a proof of claim asserting a lien against the account.[9]

---

[1] *In re Graves,* No. 14-11240, ECF 51-1, at 13.
[2] *Id.* at 15.
[3] *In re Graves,* No. 14-11240, ECF 37-1, at 2.
[4] *Id.* at 3.
[5] *Id.*
[6] *In re Graves,* No. 14-11240, ECF 37, at 2.
[7] *Id. Accord,* Trustee's Estate Cash Receipts and Disbursements Record.
[8] *In re Graves,* No. 14-11240, ECF 37, at 2.
[9] *Id.* at 1.

ABC has now filed an amended proof of claim and asks the Court to direct the Trustee to disburse funds from the account to ABC prior to approval of his final report.[10] ABC claims $33,386 in attorney's fees dating from two years after the judgment on the note until the day before ABC filed the amended proof of claim.[11] Together with the balance unpaid on the judgment—$76,699—this would almost entirely deplete the proceeds from the brokerage account.

The Trustee objects to the post-judgment legal fees and argues that because the state court judgment only awarded $4,500 in legal fees, ABC can claim no more.[12] According to the Trustee, after a judgment on a promissory note, the doctrine of merger dictates that there can be no further cause of action on that note because any claims to attorney fees promised in the note merge into the judgment.[13] ABC responds that there is a widely-recognized exception to the doctrine of merger—when there is a specific contractual obligation to pay post-judgment collection fees[14]—and the promissory note language quoted above falls under that exception.[15]

Would Texas recognize an exception to the doctrine of merger, and if so, do the terms of this promissory note fall under the exception?[16]

---

[10] *In re Graves*, No. 14-11240, Claim No. 7-2; ECF 37, at 1.

[11] *In re Graves*, No. 14-11240, ECF 37-1, at 4.

[12] *In re Graves*, No. 14-11240, ECF 41, at 2. At the hearing on May 24, 2016, the Trustee stated that he does not object to the reasonableness of the legal fees claimed by ABC, only that the doctrine of merger bars attorney's fees over $4,500.

[13] *Id* at 2.

[14] *In re Graves*, No. 14-11240, ECF 51, at 2.

[15] *Id* at 3.

[16] This determinative question of Texas state law would seem a good candidate for certification to the Texas Supreme Court. However, the Texas Supreme Court only accepts questions certified by Federal appellate courts. *In re Life Partners Holdings, Inc.*, No. DR-11-CF-43-AM, 2015 WL 8523103, at *8 n. 10 (W.D. Tex. Nov. 9, 2015) ("[T]he Texas Supreme Court does not permit Federal district courts to certify questions of law"); *see also* Tex. R. App. P. 58.1.

## II.  ANALYSIS

### A.  Does the Doctrine of Merger Prevent Collecting Post-Judgment Attorney Fees in Texas?

#### i.  Res judicata and the doctrine of merger in Texas.

Res judicata—meaning a thing adjudicated[17]—is a legal principal that stops parties from litigating issues that have already been decided. It applies when a new case has the same "identity of parties, issues, subject matter, relief sought and cause of action" as a previous case.[18] Courts have also applied this doctrine to bar issues that *could* have been decided in a previous case.[19] Res judicata serves the public goals of affording full respect to prior judgments and relieving courts from repetitious litigation, and the private goal of "repose"—to be finally free from the cost and hassle of litigation.[20]

The Texas Supreme Court has adopted the "transaction test" to determine whether res judicata preempts litigation, stating that "[a] subsequent suit will be barred if it arises out of the same subject matter [as] a previous suit and which through the exercise of diligence, could have been litigated in a prior suit."[21] Res judicata is operative if the facts underlying the cause of action had already occurred before the previous decision.[22] However, res judicata "extends only to facts in issue as they existed at the time the judgment was rendered, and does not prevent a re-

---

[17] *Res judicata.* BLACK'S LAW DICTIONARY (10th ed. 2014).

[18] *Franklin v. Rainey,* 556 S.W.2d 583, 585 (Tex. Civ. App.—Dallas 1977, no writ).

[19] *Kaspar Wire Works, Inc. v. Leco Eng'g & Mach., Inc.,* 575 F. 2d 530, 535 (5th Cir. 1978); *Texas Water Rights Comm'n v. Crow Iron Works,* 582 S.W.2d 768, 771-72 (Tex. 1979).

[20] CHARLES ALAN WRIGHT & ARTHUR R. MILLER, 18 FEDERAL PRACTICE AND PROCEDURE § 4403, 23-27 (2d ed. 2012).

[21] *Barr v. Resolution Trust Corp. ex rel. Sunbelt Fed. Sav.,* 837 S.W.2d 627, 631 (Tex. 1992) ("[A] final judgment on an action extinguishes the right to bring suit on the transaction, or series of connected transactions, out of which the action arose.") (citing Restatement (Second) of Judgments § 24(1)); *see also Ogletree v. Crates,* 363 S.W.2d 431, 435-36 (Tex. 1963).

[22] *Cornwall Pers. Ins. Agency, Inc. v. Nebb,* No. 07-08-0450-CV, 2010 WL 366781, at *5 (Tex. App.—Amarillo Feb. 2, 2010, pet. denied) (mem. op.). In this case, Cornwall had a judgment taken against it in a state court lawsuit and then filed bankruptcy. Cornwall's counsel in the lawsuit, Nebb, filed a proof of claim in the bankruptcy case for attorney's fees, which were paid by the estate. Later, Cornwall filed a malpractice suit against Nebb. The court held that the claim was barred, because Cornwall had "suffered harm" by having lost the state court lawsuit before the bankruptcy, and therefore should have counterclaimed for malpractice when Nebb filed a proof of claim for attorney fees in the bankruptcy case.

4

examination of the same question between the same parties, where, in the interval, the facts have changed, or new facts have occurred which may alter the legal rights or relations of the parties."[23]

The doctrine of merger is a specific application of res judicata, and operates with the same principles.[24] Under the doctrine, "if a plaintiff prevails in a lawsuit, his cause of action merges into the judgment and the cause of action dissolves."[25] For example, under Texas law, general contractual obligations to pay for legal fees and collection fees typically merge with a judgment on the underlying contract.[26] Texas courts also consider judgment-enforcement actions to be legally distinct from actions on a contract, so an obligation to pay "costs of collection" does not extend to post-judgment garnishment actions.[27]

But what if, in the contract itself, the parties have expressed their intent that post-judgment costs and fees will survive the judgment?

### ii. Can obligations under a contract ever survive a judgment on that contract?

Whether a post-judgment contractual obligation survives a judgment is an issue of first impression in Texas. Based on the way the Texas Supreme Court has handled similar issues, it would most likely recognize an exception to the merger rule where new facts have arisen since

---

[23] *City of Lubbock v. Stubbs,* 327 S.W.2d 411, 414 (Tex. 1959); *see also Franklin v. Rainey,* 556 S.W.2d 583, 585 (Tex. Civ. App.—Dallas 1977, no writ).

[24] *Puga v. Donna Fruit Co.,* 634 S.W.2d 677, 679 (Tex. 1982) ("The doctrine of res judicata deals generally with the conclusive effects of judgments, encompassing the separate judicial doctrines of merger, bar and collateral estoppel."); *see also Jeanes v Henderson,* 688 S.W.2d 100, 103 (Tex. 1985).

[25] *Jeanes,* 688 S.W.2d at 103.

[26] *Evans v. Frost Nat'l Bank*, No. 05-12-01491-CV, 2015 WL 4736543, at *3 (Tex. App.—Dallas Aug. 11, 2015, no pet.) (mem. op.) In *Evans,* a creditor sought post-judgment attorney fees based on an attorney's fee provision in a guaranty agreement. The court held that "claims under the guaranty agreement merged into the agreed judgment and were extinguished." However, the court did not address whether the guaranty contained language supporting post-judgment attorney fees.

[27] *Henry v. Ins. Co. of N. Am.,* 879 S.W.2d 366, 368 (Tex. App.—Houston 1994 [14th Dist.], no writ). In *Henry,* a creditor sought attorney's fees for post-judgment garnishment. The court held that a contractual obligation to pay "costs of collection, attorneys' fees, and interest" did not include garnishment fees, because "the garnishment action is an enforcement suit, not a suit on a contract. Thus, there exists no contractual ground on which to base an award of attorneys' fees in a garnishment action."

the prior litigation and where the parties have expressed their intent that an obligation survive the judgment.

First, the Texas Supreme Court has held that an action based on facts that develop after the prior action is not barred by res judicata.[28] In *City of Lubbock v. Stubbs,* Lubbock sued a resident, Stubbs, for violating the city's zoning ordinance.[29] Stubbs argued the claim was barred because a court had previously held the zoning rules to be arbitrary and unreasonable as applied to his property.[30] However, the zoning rules had changed since that decision, as had Stubbs's use of the property.[31] The Texas Supreme Court found the claim was not barred.[32] The court determined that "the cause of action alleged by the city is based upon acts of Stubbs subsequent to the judgment rendered in the former suit," and therefore "the issues are not the same."[33] In Texas, res judicata "extends only to facts in issue as they existed at the time the judgment was rendered, and does not prevent a re-examination of the same question, where . . . the facts have changed, or new facts have occurred which may alter the legal rights or relations of the parties."[34]

---

[28] *City of Lubbock v. Stubbs,* 327 S.W.2d 411, 412 (Tex. 1959); *see also Franklin v. Rainey,* 556 S.W.2d 583 (Tex. Civ. App.—Dallas 1977). Rainey had previously sued Franklin because he diverted a natural river and damaged Rainey's property. The court found in Rainey's favor but entered a take-nothing judgment. More than 20 years later, Franklin sued Rainey's successor in title and alleged that renovation work caused the river to divert again and damage Franklin's property. The court found that "as to [facts] that arise subsequently, the prior judgment will not be res judicata." *Id.* at 585.

[29] *Id.*

[30] *Id.* at 413.

[31] *Id.* at 414.

[32] *Id.*

[33] *Id.*

[34] *Id.*; *see also Marino v. State Farm Fire & Cas. Ins. Co.*, 787 S.W.2d 948 (Tex. 1990). In *Marino*, the issue was whether an insured's original suit on an insurance policy barred a subsequent suit alleging breach of the duty of good faith where this duty was not yet recognized until after the time judgment was rendered in the first suit. The Supreme Court of Texas held that the "'bad faith' claim was based on rights subsequently acquired, it was not part of his former cause of action and therefore was not barred by res judicata." *Id.* at 950.

Second, the Texas Supreme Court has held that separate terms of a continuing contract can be breached and sued upon separately, even after a previous judgment on the contract.[35] In *Ben C. Jones & Co. v. Gammel Statesman Publishing Co.,* Jones had a two-year printing contract with Gammel—Gammel would print, bind, and deliver books, and Jones would sell them.[36] Gammel failed to deliver certain orders and Jones sued for its lost profits.[37] During the trial, more causes of action arose when Gammel continued to fail to make deliveries—however, Jones did not add these claims to the litigation.[38] The trial court rendered judgment for Jones but stated that the judgment would be final as to all causes of action that arose before the judgment and were known to the plaintiff at the time of the judgment.[39] Under the trial court's ruling, Jones lost the ability to sue for the breaches that occurred during or after the litigation.[40] The Supreme Court of Texas reversed, holding that "[t]his was a continuing contract and a failure . . . to perform any one of the things contracted for by the terms of the contract was a partial breach thereof and constituted a separate and independent cause of action."[41] Thus, the judgment did not bar claims on the breaches that occurred during the litigation, even though they were obligations arising under the original contract.[42]

Because the parties in *Ben C. Jones* contracted for performance over a period of time, the judgment on certain breaches of the contract did not dissolve all future contractual obligations.[43] The trial court's judgment did not merge all claims on breaches that occurred during the litigation of previous claims—the future contractual obligations survived the entry of judgment

---

[35] *Ben C. Jones & Co. v. Gammel Statesman Pub. Co.,* 99 S.W. 701, 703 (Tex. 1907).
[36] *Id.* at 702.
[37] *Id.*
[38] *Id.* at 703.
[39] *Id.*
[40] *Id.*
[41] *Id.*
[42] *Id.*
[43] *Id.*

on the contract, as intended by the parties to this "continuing contract."[44] This suggests that contractual obligations may survive judgment under Texas law where the contract demonstrates that the parties so intended.

Third, the Texas Supreme Court has said that, generally, res judicata only applies to claims that, "through the exercise of diligence, could have been litigated in a prior suit."[45] If the claims could not have been litigated in the prior action, then res judicata does not apply.[46] Indeed, *City of Lubbock* and *Ben C. Jones* can be read as applications of this general rule. In *City of Lubbock*, a different set of facts were at issue in the second suit that could not have been litigated in the previous case. In *Ben C. Jones*, new causes of action arose from breaches of the ongoing obligations under the contract. The Texas Supreme Court would most likely apply this general limitation on res judicata to the more specific doctrine of merger.

Taken together, Texas law appears to support an exception to the merger doctrine at least where (1) new facts arise after the judgment and (2) the contract clearly evinces the intent of the contracting parties that obligations continue after judgment. In other jurisdictions, courts have held that a clear intent for contractual obligations to continue post-judgment is sufficient for an exception to the merger doctrine.[47] Perhaps the Texas Supreme Court would adopt the same rule; however, this dispute can be resolved on narrower grounds.

---

[44] *Ben C. Jones & Co. v. Gammel Statesman Pub. Co.*, 99 S.W. 701, 703 (Tex. 1907).

[45] *Barr v. Resolution Trust Corp. ex rel. Sunbelt Fed. Sav.*, 837 S.W.2d 627, 628 (Tex. 1992).

[46] *See Hernandez v. Del Ray Chem. Int'l, Inc.*, 56 S.W.3d 112, 116 (Tex. App—Houston [14th Dist.] 2001, no pet.) ("For res judicata to apply, a claim must be in existence at the time suit is filed, and cannot merely be [a] prospective anticipated claim.").

[47] *See, e.g., Tricon Energy Ltd. v. Vinmar Int'l, Ltd.*, 718 F.3d 448, 458-59 (5th Cir. 2013) (Considering the doctrine of merger under federal law the Fifth Circuit stated "[p]arties wishing to contract around the statutory rate [of post-judgment interest] must do so using 'clear, unambiguous[,] and unequivocal language,' otherwise, the contract merely merges into the judgment."); *Poilevey v. Spivack*, 857 N.E.2d 834, 837 (4th District 2006) (creditor's claim for postjudgment attorney fees "in accord with the note" was not barred by merger doctrine), *appeal denied*, 857 N.E.2d 834 (2007); *Prod. Credit Ass'n of Madison v. Laufenberg*, 420 N.W.2d 778, 779 (Ct. App. 1988) ("In the absence of an express agreement otherwise, the obligation of a debtor to pay the creditor's costs and fees of collection or foreclosure is merged in a judgment in favor of the creditor"), *review denied*, 428 N.W.2d 554(1988); *In re Riebesell*, 586 F.3d 782, 794 (10th Cir. 2009) ("If parties want to override the general rule on merger and

**B. Does the language of the note come under the exception?**

The narrower exception to the merger doctrine applies to the note here if (1) new facts have arisen that could not have been previously litigated and (2) the language contained in the note indicates an intent that post-judgment attorney's fees survive the judgment.

The issue here is whether ABC is entitled to post-judgment attorney's fees for collection activities. By their nature, post-judgment collection efforts happen after a judgment and so could not have been litigated. Thus, the first element—new facts are in issue that could not have been litigated before the judgment—has been met.

The language of the note also clearly evinces the parties' intent that some obligations of the contract continue post-judgment. Here Graves agreed "to pay to Payee all of Payee's collection costs and expenses, including but not limited to, (a) court costs; [and] (b) Payee's reasonable attorney's fees incurred." Further, the agreement specified that "[t]he costs recoverable by Payee under this section shall include expenses which may not be taxable as court costs, including, without limitation, all costs and expenses incident to appellate, bankruptcy, post-judgment and alternative dispute resolution proceedings."[48] This specific reference to post-judgment activities establishes the parties' intent that the obligation to pay post-judgment attorney's fees in ABC's promissory note survives the judgment and remains in effect.[49]

---

specify a post-judgment interest rate, they must express such intent through clear, unambiguous and unequivocal language").

[48] *In re Graves,* No. 14-11240, ECF 51-1, at 15.

[49] Several federal courts in other circuits have addressed this issue and recognized an exception to the doctrine of merger where the contract provides for post-judgment costs. In Oklahoma, as in Texas, the doctrine of merger holds that all rights under a contract are extinguished by and merged into the terms of a judgment. Despite this, the Tenth Circuit Bankruptcy Appellate Panel recognized an exception to the merger doctrine under Oklahoma state law where a mortgage term provides for recovery of post-judgment costs and there is "clear evidence of an intent to preserve the effectiveness of the attorney's fee and expense provision […] post-judgment." *In re Sun 'N Fun Waterpark LLC,* 408 B.R. 361, 371 (B.A.P. 10th Cir. 2009). Pennsylvania's merger doctrine is also substantially similar. *See Lance v Mann,* 360 Pa. 26, 28, 60 A.2d 35, 36 (1946) (a "cause of action is merged in the judgment"). The Third Circuit nevertheless also recognized an exception to the merger doctrine under Pennsylvania

III.    **CONCLUSION**

There is an exception to the merger doctrine that allows contractual obligations intended to survive a judgment on the contract to remain effective post-judgment. The promissory note here creates an obligation that was intended to, and did, survive the judgment. And this obligation is based on new facts that could not have been litigated in the prior suit. This Court will therefore overrule the Trustee's objection to ABC's proof of claim, and will grant the motion to authorize distribution, both through two separate orders.

---

state law whereby "[p]arties to a mortgage may rely upon a particular provision post-judgment if the mortgage clearly evidences their intent to preserve the effectiveness of that provision post-judgment." *In re Stendardo*, 991 F.2d 1089, 1095 (3d Cir. 1993) (recognizing the exception, but finding that the mortgage did not indicate that the parties intended to preserve the debtor's obligation to pay taxes and premiums post-judgment.). The Third Circuit also recognized the exception when applying the New Jersey state merger doctrine. *In re A & P Diversified Techs. Realty, Inc.*, 467 F.3d 337, 342 (3d Cir. 2006) ([W]e predict that the Supreme Court of New Jersey would find the exception to the merger doctrine, as we explained it in *Stendardo* . . . .").